HUMPHREYS, J.,
with whom ELDER and ALSTON, JJ. join, dissenting.
I agree with the majority’s general proposition that if Glen Patrick Merritt (“Merritt”) was the “muscle” or “enforcer” for the drug dealers he associated with in this case, the evidence might arguably be sufficient to support the conclusion that he was aiding and abetting in the possession with the intent to *560 distribute, transportation with the intent to distribute, and conspiracy to distribute the ecstasy. However, I respectfully dissent from the majority’s holding that the evidence was sufficient as a matter of law to convict Merritt solely on the theory that he was aware of the contents of the suitcase based upon the sheer speculation and suspicion of police officers that he acted in a role of “lookout,” “enforcer,” or the “muscle,” safeguarding the transportation of the drug ecstasy into the Commonwealth. McMorris v. Commonwealth, 276 Va. 500, 506, 666 S.E.2d 348, 351 (2008) (“[T]o sustain a criminal conviction, the Commonwealth is required to prove more than a suspicion of guilt or probability of guilt.” (citation omitted)).
Simply being present when a crime occurs does not subject one to criminal liability. The gravamen of being a principal in the second degree to the criminal acts of others is either actually or constructively aiding and abetting in the commission of the crime. Muhammad v. Commonwealth, 269 Va. 451, 482, 619 S.E.2d 16, 32-33 (2005) (“ ‘A principal in the second degree, or an aider or abettor as he is sometimes termed, is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime.... The test is whether or not he was encouraging, inciting, or in some manner offering aid in the commission of the crime. If he was present lending countenance, or otherwise aiding while another did the act, he is an aider and abettor or principal in the second degree.’ ” (quoting Jones v. Commonwealth, 208 Va. 370, 372-73, 157 S.E.2d 907, 909 (1967))). The majority holds that a reasonable jury could infer from both circumstantial and direct evidence that Merritt aided in the commission of these crimes by being the “enforcer” or the “muscle” in the drug transaction. However, the record in this case is bereft of any circumstantial or direct evidence that would support a fact finder’s rational conclusion, without resorting to speculation, that Merritt provided any such assistance by protecting McDaniels and Spratley who possessed and transported the drugs in the suitcase and that he conspired to distribute the drugs. While a fact finder is entitled to draw reasonable inferences from proven facts, “all circumstances proved must *561 be consistent with guilt and inconsistent with innocence and exclude all reasonable conclusions inconsistent with guilt.” McMorris, 276 Va. at 506, 666 S.E.2d at 351 (citations omitted). Two police experts testified at trial regarding the role of the “muscle” or “enforcer” in a drug transaction. Detective Massetti testified that the individual is typically bigger physically or armed in order to protect the product or the distributor. Massetti further provided that in scenarios like this, it is typical “for them to use ... a large guy who’s armed,” as the “muscle,” “and his job is to keep an eye out and make sure nothing negative happens.” According to Detective Fowler, the primary purpose of the “enforcer” or “lookout” is to protect the product or the distributor to ensure that the transaction goes smoothly, while his secondary purpose is to accept or “chase[] down” payments for the drugs. In addition, Fowler stated that the “enforcer” is often willing to carry a firearm or some other weapon, and he is not afraid to use it because of his primary purpose. Fowler further stated that in his opinion, based on his training and experience, the transaction in this case was a drug transaction; and Massetti opined that, based on his observations as an expert and the facts of what occurred that evening, Merritt “was clearly the muscle in this.” However, the evidence in the record does not support Massetti’s opinion, nor does it support the inferences drawn from the speculations and suspicions implicit in Fowler’s testimony.
The evidence fails to show that Merritt meets the physical description provided by either expert witness regarding requisite physical attributes of an “enforcer” or “muscle” of a criminal group. There is no evidence in the record that Merritt was bigger than average physically, nor is there any evidence regarding the stature of the other individuals in the drug transaction from which a jury could reasonably conclude that Merritt was clearly the “muscle” due to his physique. In addition, there is no evidence that he was armed with a firearm or other weapon suitable either for protecting his associates or for “chas[ing] down” payments from recalcitrant consumers during the time in question. The only weapon *562 found on Merritt was a small penknife that was part of his belt buckle. With regard to the gun found in the vehicle, Bolton was the one who informed the officers of its presence and location, and he claimed ownership of it. While the majority contends that a jury could reasonably infer that because Merritt was sitting in the passenger seat close to the location of the gun and magazine, he may have had it on his person while he was in the parking lot; yet, far from constituting a reasonable inference, this speculation by the majority is unsupported by any evidence in the record and is a good example of the sandy foundation upon which the Commonwealth’s case against Merritt was built. It is just as easy to speculate that the gun and magazine were never on Merritt’s person or that he actually had no knowledge of their presence in the vehicle. The location of the gun in the console and the magazine in the glove compartment does nothing to bolster the majority’s contention that Merritt had access to the firearm, necessarily knew about its presence in the vehicle, or that he had it on his person in the parking lot before he returned to the vehicle.
It is certainly a possibility that Merritt was involved as a principal in the illegal activities of his associates but that possibility is legally insufficient for a conviction, and neither is guilt by association a substitute for evidence that establishes involvement in a criminal enterprise beyond a reasonable doubt. Even viewing the facts contained in this record in the light most favorable to the Commonwealth, without resorting to the sheerest compound speculation, the evidence does not lead only to the logical inference that Merritt was there to protect Bolton, McDaniels, Spratley, and the ecstasy. Merritt arrived at the bus depot with Bolton, got out of the vehicle, and stood at various positions in the parking lot while holding a cell phone to his ear without talking into it or changing facial expressions. During his sojourn in the parking lot, Merritt remained attentive, and continuously scanned the parking lot, and, according to the officers, followed and shadowed McDaniels and Spratley. The officers testified that Merritt’s actions *563 were similar to those of a surveillance officer protecting the safety of an undercover officer.
Merritt then walked fifteen to thirty feet behind McDaniels and Spratley as they walked towards the Lexus, thus turning his back to the bus and those standing around it. When they loaded the suitcase into the trunk, Merritt stood a short distance behind the vehicle and continued to scan the parking lot. Merritt never acknowledged McDaniels and Spratley, nor did he touch the suitcase containing the drugs. After everyone entered the vehicle, Merritt returned to the passenger seat. In looking at Merritt’s actions during his time in the parking lot, while it is certainly reasonable to suspect Merritt’s involvement in his associates’ activities, the evidence simply does not rise to the level of circumstantially demonstrating beyond a reasonable doubt that Merritt aided and abetted his companions as the “muscle” or “lookout” of the group.
In addition, there is no direct evidence linking Merritt to the actual drug transaction. The only direct evidence regarding Merritt is the Western Union receipt noting that Bolton sent him $125 in New York City a few days prior to the date in question. While Fowler testified as an expert as to various possible reasons for the money, Fowler admitted that he ultimately had no idea what it was for. All the other evidence is purely circumstantial in nature, and even in its totality, does not exclude all reasonable conclusions inconsistent with guilt. With regard to the cell phones, the record merely reflects that there were phone calls made between the phones found on Merritt and McDaniels and Bolton, but it does not establish to whom the phone numbers were registered or what the phone calls were regarding. In addition, the fact that the number of one of the cell phones found on Merritt is designated as “G Money” in Bolton’s phone provides nothing more than a postulation that Bolton actually referred to Merritt by that alias in any interaction with him. Further, the lack of evidence regarding the notation “GMNY 1000” in the notebook does nothing except provide a vehicle for the speculation engaged in by the majority as to what that reference means. *564 There is no evidence in the record that the phones found on Merritt actually belonged to him, or that the drug notebook belonged to Bolton such that the notation “GMNY 1000” could only mean “G Money” and thus referred solely to Merritt.
While the location and condition of the plastic baggie corner was consistent with it having recently fallen out of the vehicle’s passenger door, the record is devoid of any evidence that the only logical inference is that the baggie was in Merritt’s possession before it fell out of the car. The plastic baggie corner was, according to Fowler’s testimony regarding the packaging of drugs, consistent with drugs packaged for personal use, and no latent fingerprints were obtained from it linking it to Merritt. In addition, there is no evidence regarding the owner of the drug notebook found in the back seat by Bolton. Neither the four bus tickets for transportation between Norfolk and New York nor the receipt for the large number of baggies found in the back seat contain any indication of who made the purchases.
The majority contends, “the only logical inference from this evidence is that Merritt was acting as a lookout while McDaniels and Spratley transported the drugs through the parking lot.” Yet, while it may be logical to suspect Merritt’s involvement, that is not the only logical inference supported by the evidence in this record. If we resist the temptation to speculate and just consider whether the evidence points inexorably toward guilt, two conclusions quickly emerge. First, as “enforcers” go, Merritt would not have been able to provide much in the way of protection because the only weapon found on him was the small penknife in his belt, he was walking fifteen to thirty feet behind McDaniels and Spratley with his back to the bus and the rest of the parking lot, and he proceeded to stand behind the vehicle several feet away from where the gun and its separate magazine were located in the glove compartment and center console of the vehicle while the others loaded the suitcase into the trunk. Second, the Western Union receipt merely shows that Merritt was in New York days before the arrest and that he received only $125 — a sum that hardly seems consistent with payment for involvement in a major *565 drug transaction as intricate as that described by the expert witnesses who testified in this case. In looking at the totality of the evidence presented by this record, I find it legally insufficient to prove more than a suspicion that Merritt was aiding and abetting as the “muscle” or “enforcer” of the drug transaction and thus was a principal in the second degree to his associates’ criminal activities. The evidence when viewed in the light most favorable to the Commonwealth does not “exclude all reasonable conclusions inconsistent with guilt.” McMorris, 276 Va. at 506, 666 S.E.2d at 351 (citations omitted).
Because I would hold that the evidence presented was not sufficient to negate every reasonable hypothesis consistent with innocence, I would hold that the trial court erred in letting the jury determine whether Merritt was guilty of aiding and abetting in the possession of ecstasy with the intent to distribute, transportation of ecstasy with intent to distribute, and conspiracy to distribute ecstasy. Thus, I would reverse the convictions and dismiss the indictment.